# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARCUS FONTAIN,  
      Plaintiff,  

vs.  

APRIL L. LANE, et al.,  
      Defendants.  

Case No. 1:19-cv-304  
McFarland, J.  
Litkovitz, M.J.  

**ORDER AND REPORT  
AND RECOMMENDATION**

Plaintiff Marcus Fontain filed this pro se civil rights action under 42 U.S.C. § 1983 on April 26, 2019, against April L. Lane, Jeffrey S. Lane, Harjinder Sandhu, Jasreen K. Sandhu, Brian J. O'Connell, Zachary D. Prendergast, and Does 1 through 11.[1]  Plaintiff alleges that defendants, a court-appointed receiver, lawyers, and others, violated his federal constitutional rights through their actions in connection with a state court lawsuit concerning his ownership rights of the Dina Towers Condominium Building ("Dina Towers") in Hamilton County, Ohio. (Doc. 1).  This matter is before the Court on defendants' motions to dismiss (Docs. 8, 9) and plaintiff's response in opposition (Doc. 46).  This matter is also before the Court on plaintiff's request, and amended request, for judicial notice of the ruling of the Ohio First District Court of Appeals under Fed. R. Evid. 201(b) (Docs. 12, 13), plaintiff's motion for leave to amend and supplement the complaint (Doc. 16), plaintiff's omnibus motion to strike (Doc. 23), plaintiff's motions to set the case on the trial calendar and motion for electronic filing privileges (Docs. 24, 26, 64), plaintiff's motion for sanctions (Doc. 50), defendants' response in opposition to plaintiff's motion for sanctions (Docs. 53, 56), plaintiff's reply memorandum in support of sanctions for fraud upon the Court for submission of false and misleading pleadings (Doc. 57), and plaintiff's "motion for declaratory judgment, equitable and injunctive relief, motion for

---

[1] While plaintiff named Kyle M. Rapier as a defendant in his complaint, he subsequently dismissed this defendant with prejudice.  (Doc. 15)

disciplinary referral, criminal referrals and for sanctions and rule 57 speedy hearing" (Doc. 62). The Court's previous stay of this matter is lifted in light of the conclusion of plaintiff's related state court proceedings.

## I. Complaint and Procedural Background

The complaint alleges that plaintiff has a 60% ownership, or 18 units, in Dina Towers. Plaintiff alleges that defendants Harjinder and Jasreen Sandhu, owners of eight units in Dina Towers, filed a lawsuit in state court to divest plaintiff of his property ownership rights. (Doc. 1 at ¶¶ 29-30). Hamilton County Court of Common Pleas Judge Steven Martin appointed a receiver to manage the affairs of the Dina Towers during the litigation. (*Id.* at ¶ 40). Plaintiff alleges that the case ultimately settled, was dismissed with prejudice, and is therefore "procedurally closed." (*Id.* at ¶ 32). Plaintiff states that the settlement agreement allowed the receiver to manage Dina Towers for six months, and the receivership therefore ended on February 11, 2019. (*Id.* at ¶ 42).

Plaintiff alleges that despite the case being dismissed with prejudice, the defendants refiled a lawsuit over the property and numerous motions remain pending in state court. (*Id.* at ¶¶ 32, 50). Plaintiff alleges that "[o]ne of the Motions pending ins [sic] asking for an Order to— allow the foreclosure—on the [sic] all the owners of the condominium units, and especially the Fontain's to pay for a sham deficit of the Receiver and to pay for the Receiver's lawyer." (*Id.* at ¶ 32). Plaintiff alleges that after the receivership ended, the state court issued a restraining order against plaintiff and his wife and agreed to extend the receivership "in violation of the Agreed Entry of Dismissal with prejudice and in breach of the Settlement Agreement." (*Id.* at ¶¶ 62-63).

2

Plaintiff alleges that the state court, which was without jurisdiction over the matter, scheduled a hearing for April 30, 2019 to hear the pending motions in the action.  (*Id.* at ¶ 54).

On April 26, 2019, plaintiff filed the instant federal action based on the actions set forth above and alleging violations of his rights under the due process clause, the First, Fourth and Fourteenth Amendments of the U.S. Constitution, and state law.  (*Id.* at ¶¶ 113-178).  Plaintiff also sought a temporary restraining order from this federal Court enjoining "the Defendants from continuing the litigation in the State case pending further proceedings in this Court. . . ."  (Doc. 4 at 2).  Plaintiff argued that Hamilton County Court of Common Pleas Judge Terry Nestor, who replaced Judge Martin, had no authority to extend the receivership authorized by Judge Martin.  (*Id.* at 3).  Plaintiff alleged that defendants have violated his constitutional rights by obtaining a restraining order against him and extending the receivership beyond February 11, 2019.  (*Id.*).  Plaintiff also filed an amended motion for a TRO.  (Doc. 5).  In an affidavit accompanying the motion, plaintiff continues to express discontent with the state court proceedings and alleges that the state court is devoid of jurisdiction over the case.  (*Id.* at 2).  Plaintiff alleges that the state court continues to allow defendants to breach the settlement agreement reached in August 2018 and violate the agreed entry of dismissal with prejudice in violation of his due process rights.  (*Id.* at 4).

On May 9, 2019, the undersigned recommended that this Court abstain from exercising its jurisdiction over plaintiff's claims against defendants pending the conclusion of the state court proceedings.  (Doc. 7).  Thereafter, the District Judge adopted the Report and Recommendation.  (Doc. 11).

Defendants then filed motions to dismiss in May 2019 (Docs. 8, 9), and plaintiff has filed nine motions (Docs. 12, 13, 16, 23, 24, 26, 50, 62, 64), all of which remain pending in light of the Court's stay of this case pending the conclusion of the state court proceedings.

During the stay of the federal proceedings, this federal Court requested periodic status reports from the parties, and what follows are the updates on the state court proceedings.

While this federal court case was stayed, plaintiff pursued an appeal of the receivership action, including the imposition of costs by the state trial court against plaintiff. The Ohio First District Court of Appeals remanded for reconsideration of costs plaintiff was ordered to pay. On remand, the trial court determined that plaintiff did not owe any additional monies for the receivership fees and costs. *See H&R Cincy Props., LLC v. Fontain*, Case No. C1900574, 2021 Ohio App. LEXIS 558, at *12 (Ohio Ct. App. Feb. 26, 2021). Plaintiff did not appeal and the trial court's decision in the receivership action became final. *See H&R Cincy Props., LLC v. Fontain*, No. A1705644 (Ohio Com. Pl. Dec. 12, 2019) (docket sheet); Ohio App. R. 3(A), 4(A)(1) (providing for 30 days to file an appeal).

In the meantime, plaintiff filed a pro se action against Harjinder and Jasreen Sandhu, H&R Cincy Properties, LLC, and Brian O'Connell (the Sandhu defendants) and the receiver appointed in the receivership action, the receiver's wife, and the receiver's counsel (the receiver defendants). *See Fontain v. Sandhu*, No. A-1901296 (Ohio Com. Pl. Dec. 12, 2019). The Sandhu defendants moved to dismiss Fontain's claims, arguing that the action was an impermissible collateral attack on the rulings in the receivership action. The receiver defendants also filed a motion to dismiss. On December 12, 2019, the trial court granted both motions to dismiss, agreeing that Fontain's claims constituted an impermissible collateral attack on the

judgment entered against Fontain in the receivership action.  *See Id*. (Entry Granting Motion to Dismiss, 12/13/2019; Order Dismissing Plaintiffs' Claims with Prejudice, 12/13/2019).

Plaintiff appealed to the First District Court of Appeals.  *See Fontain v. Sandhu*, No. C-200011, 2021 WL 3520944, at *1 (Ohio Ct. App. Aug. 11, 2021).[2]  That court summarized the two inter-related state court proceedings as follows:

> **Case No. A-1705644 [the receivership action]**
>
> In October of 2017, a complaint was filed against plaintiff-appellant Marcus Fontain, and other defendants, alleging illegal actions involving a condominium association.  Plaintiffs in that action moved for the appointment of a receiver to take control of the association and manage the property during the litigation.  On August 10, 2018, the trial court in that case appointed Prodigy Properties as the receiver.
> * * *
> Shortly after the receiver was appointed, the parties entered into a settlement agreement.  As part of the settlement agreement, the parties agreed that the receivership would end on February 11, 2019.  The receiver was not a party to this agreement.  Subsequently, the trial court entered an order on September 26, 2018, dismissing all claims against all defendants, except for the claims against Cinvexco, LLC.  The trial court's entry expressly left those claims pending.  The entry also stated:
>
> > In addition, the Order granting Plaintiff's Motion for Appointment of a Receiver, entered on August 10, 2018, shall remain in effect to and including February 11, 2019, at which time the Receiver shall make his final report to the Court, and the parties shall submit to the Court a Final Entry.
>
> The plaintiffs and the receiver subsequently filed respective motions to extend the receivership.  On February 13, 2019, the trial court extended the receivership "until further order of the court."  The trial court ultimately terminated the receivership in its final entry on September 12, 2019[.]
> * * *

---

[2] This Court "may take judicial notice of proceedings in other courts of record."  *Rodic v. Thistledown Racing Club, Inc*., 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)).  *See also Buck v. Thomas M. Cooley Law Sch*., 597 F.3d 812, 816 (6th Cir. 2010) (The Court "may take judicial notice of other court proceedings without converting [the defendants' Rule 12(b)(6) motions to dismiss] into one for summary judgment") (citing *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008)).  As defendants accurately state, "The factual and legal history of this case has been extensively litigated and well-documented by Ohio's trial courts and courts of appeal."  (Doc. 56 at PAGEID 2178).  The undersigned therefore takes judicial notice of *Fontain v. Sandhu*, No. A-1901296, Hamilton County Court of Common Pleas, and *Fontain v. Sandhu*, No. C-200011, Ohio Court of Appeals, First Appellate District.

On October 9, 2019, defendants in that action appealed the trial court's final entry, arguing only that the trial court erred in requiring the dismissed defendants to pay the costs of the receiver incurred after February 11, 2019[.] The assignment of error was sustained, and the cause was remanded to the trial court to reassess fees. For ease of reading, this cause will be referred to as the "receivership action."

**The Current Action [***Fontain v. Sandhu***, No. A1901296 (Hamilton Cty. Com. Pls.]**

On March 12, 2019, after the trial court extended the receivership but before the entry of final judgment in the receivership action, Fontain filed a complaint and initiated the present case. The complaint was filed against Harjinder Sandhu, Jasreen Sandhu, H&R Cincy Properties, LLC, Jeffrey Lane, April Lane, Prodigy Property, LLC, Brian O'Connell, Zachary Prendergast, and "Does 1-11." Harjinder Sandhu and H&R Cincy Properties, LLC, were both plaintiffs in the prior action. Jasreen Sandhu is the wife of Harjinder Sandhu, and Brian O'Connell represented the plaintiffs in the receivership action. Prodigy Properties, LLC, was the receiver appointed in the receivership action. Jeffrey Lane and April Lane are husband and wife and are employees of the receiver. Zachary Prendergast is the attorney for the receiver.

The complaint alleged claims for (1) fraud, (2) breach of written contract, (3) breach of implied contract, (4) breach of implied covenant of good faith and fair dealing, (5) unjust enrichment, (6) an accounting, (7) breach of fiduciary duty, (8) abuse of process, (9) negligence, (10) fraudulent concealment, (11) defamation, (12) civil conspiracy, (13) collusion, (14) malicious prosecution, (15) inducing breach of contract, (16) intentional interference with contractual relations, (17) breach of the implied covenant of good faith, (18) aiding and abetting a breach of fiduciary duty, (19) engaging in self-dealing transactions, and (20) declaratory judgment and injunctive relief.

On March 18, 2019, Fontain filed an amended complaint against the same defendants with the same claims. On April 3, 2019, Fontain filed a second amended complaint[.]

Harjinder Sandhu, Jasreen Sandhu, H&R Cincy Properties, LLC, and Brian O'Connell (the "Sandhu defendants") filed a motion to dismiss the second amended complaint on May 8, 2019, arguing that the complaint was an impermissible collateral attack on the receivership action. Prodigy Properties, LLC, Jeffrey Lane, April Lane, and Zachary Prendergast (the "receiver defendants") filed a motion to dismiss the second amended complaint on May 14, 2019, arguing that Ohio law prevented Fontain from filing suit against the receiver and its agents without leave of the appointing court. Fontain filed a combined response to the motions to dismiss on June 3, 2019.

6

The Sandhu defendants and the receiver defendants filed a supplemental joint memorandum in support of their respective motions to dismiss on November 27, 2019.  The memorandum asked the court to grant the motions to dismiss or, alternatively, to stay the proceedings pending the appeal in the receivership action.  Fontain filed a request for an extension of time to file a response on December 11, 2019.

On December 13, 2019, without ruling on Fontain's motion for an extension of time to file a response, the trial court entered an order granting the receiver defendants' motion to dismiss, finding that the claims constituted a collateral attack on the judgment entered in the receivership action and finding that the claims were barred because Fontain failed to seek leave from the appointing court to file suit against the receivers.  That same day, the trial court entered an order granting the Sandhu defendants' motion to dismiss, finding that the claims constituted a collateral attack on the judgment entered in the receivership action.

Fontain filed a notice of appeal with this court on January 10, 2020.

*Id.* at **1-3.

On August 11, 2021, the First District Court of Appeals affirmed the judgment of the trial court.  *Id*.

Plaintiff filed a discretionary appeal in the Ohio Supreme Court.  *See Fontain v. Sandhu, et al*., Case No. 2022-0036 (Entry, Mar. 9, 2022).  However, before the Ohio Supreme Court could rule on plaintiff's memorandum in support of jurisdiction, plaintiff "removed" that discretionary appeal to this federal court.  *See Fontain v. Sandhu, et al*., Case No. 1:22-cv-124 (S.D. Ohio) (Doc. 1).  Thereafter, the federal court in Case No. 1:22-cv-124 remanded the matter to state court as improvidently removed.  *Id.*

On September 27, 2022, the Ohio Supreme Court declined jurisdiction to hear Fontain's appeal.  *Fontain v. Sandhu, et al*., Case No. 2022-0036 (Entry, Sept. 27, 2022).  As the state court proceedings in the receivership action and *Fontain v. Sandhu*, No. A-1901296 (Ohio Com. Pl.), *aff'd*, *Fontain v. Sandhu*, No. C-200011, 2021 WL 3520944, *appeal dismissed*, *Fontain v.*

*Sandhu, et al.*, Case No. 2022-0036 (Ohio Sept. 27, 2022) have now concluded, the parties'

motions are now ripe for review.

## II. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual

allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v.*

*Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575

(6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is

entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only

give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*

(quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a plaintiff need not plead

specific facts, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting

*Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

*Ashcroft*, 556 U.S. 662, 678. "Put another way, bare assertions of legal conclusions are not

sufficient." *Sollenberger*, 173 F. Supp. 3d at 618. And, "[t]o survive a 12(b)(6) motion to

dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action is not enough." *Id*. at 617.

8

The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

It is well settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, the Sixth Circuit has recognized that the Supreme Court's liberal construction case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## III.  Analysis

Defendants Brian O'Connell, Harjinder Sandhu, and Jasreen Sandhu (the Sandhu defendants) filed a motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 8).  The Sandhu defendants contend that the present action should be dismissed because plaintiff's complaint is barred by the Rooker-Feldman doctrine; the complaint is an impermissible collateral attack on the state court proceedings, requiring this federal court to give the same preclusive effect to the Ohio state court's judgment as would an Ohio court; and the Sandhu defendants are not state actors for purposes of 42 U.S.C. § 1983.  Similarly, defendants April Lane, Jeffrey Lane, and Zachary Prendergast (the receiver defendants) filed a motion to

dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 9).  The receiver defendants argue that as employees and counsel to the receiver in the underlying state court proceedings, "Ohio law and the express language of the order appointing the Receiver entered in the Receivership Case [in the underlying state court proceedings] prohibits filing a judicial action against the Receiver and its agents without express leave of the appointing court."  (*Id*. at PAGEID 339).  Defendants contend plaintiff's claims against them must be dismissed because plaintiff failed to obtain such leave of court.  (*Id*.; *see also Id*. at PAGEID 340-42).

In his response to defendants' motions to dismiss, plaintiff argues that the "equities of the present matter strongly favor the Plaintiff" and "that anything less than dismissing the Defendant's contentions would allow the defendants to continue their abuse of the legal system." (Doc. 46 at PAGEID 1899-1900).  Plaintiff reiterates the allegations in his complaint and argues that defendants' "claims are frivolous, feckless, and meritless."  (*Id*. at PAGEID 1899).  Plaintiff asks the Court to deny defendants' motions to dismiss because the defendants' "contentions attempt to ride roughshod over the facts and the law and such conduct should not be granted impunity but rather should be met with swift sanctions in a manner that chastens Defendant's (sic) from further abuse. . . ."  (*Id*.).

For the following reasons, the Court **RECOMMENDS** that defendants' motions to dismiss (Docs. 8, 9) be **GRANTED** as barred by claim preclusion and because it fails to state a claim for relief under § 1983.[3]

The doctrine of res judicata consists of two separate preclusion concepts, issue preclusion and claim preclusion.  *Heyliger v. State Univ. and Cmty. Coll. Sys. of Tenn*., 126 F.3d 849, 852

---

[3] The Court need not reach defendants' alternative argument that the complaint is barred by the Rooker-Feldman doctrine.

(6th Cir. 1997) (quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).  Issue preclusion, also known as collateral estoppel, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  *Id*. (quoting *Migra*, 465 U.S. at 77 n.1).  Claim preclusion, on the other hand, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit."  *Id*. (quoting *Migra*, 465 U.S. at 77 n.1).

Under the Full Faith and Credit Clause of the United States Constitution, a "federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra*, 465 U.S. at 81; *see also Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006).  This means that "if an individual is precluded from litigating a suit in state court by the traditional principles of res judicata, he is similarly precluded from litigating the suit in federal court."  *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987)).  The Court must look "to the state's law to assess the preclusive effect it would attach to that judgment."  *Id*. (quoting *Gutierrez*, 826 F.2d at 1537).

The Supreme Court of Ohio has held that "a final judgment or decree, rendered on the merits by a court of competent jurisdiction, is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them."  *State ex rel. Kendrick v. Parker*, 158 N.E.3d 573, 574 (Ohio 2020) (per curiam) (citation omitted).  *See also Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995).  The Sixth Circuit, interpreting Ohio law, has interpreted the doctrine of res judicata, or claim preclusion, as having four specific elements: (1)

a "court with jurisdiction must have issued a 'final' judgment on the 'merits'"; (2) "the first and second suits must involve the same 'transaction'"; (3) "the second suit must assert legal theories that were or could have been raised in the first suit"; and (4) "the second suit must involve the same parties or those in 'privity' with these parties." *Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 37 F.4th 1123, 1129 (6th Cir. 2022) (citations omitted).  Here, these four elements are satisfied; hence, plaintiff's complaint should be dismissed as barred by claim preclusion.

First, there was a prior valid decision on the merits.  On March 12, 2019, plaintiff initiated an action in the Hamilton County Court of Common Pleas filed under Case No. A-1901296 against defendants Harjinder Sandhu, Jasreen Sandhu, H&R Cincy Properties, LLC, Jeffrey Lane, April Lane, Prodigy Properties, LLC, Brian O'Connell, Zachary Prendergast, and Does 1-11 alleging 20 separate causes of action arising from the previous receivership action. On December 13, 2019, the state court entered judgment for the defendants, granting the defendants' motions to dismiss the plaintiff's case "finding that the claims constituted a collateral attack on the judgment entered in the receivership action and finding that the claims were barred because [the plaintiff] failed to seek leave from the appointing court to file suit against the receivers." *Fontain v. Sandhu*, 2021 WL 3520944, at *3 .  The First Appellate District of Ohio affirmed this decision on August 11, 2021.  (*Id.*).  On September 27, 2022, the Ohio Supreme Court declined jurisdiction to hear Fontain's appeal.  *Fontain v. Sandhu, et al.*, Case No. 2022-0036 (Entry, Sept. 27, 2022).  The first element for applying the doctrine of res judicata is satisfied.

Second, the instant action involves the same parties as the state court proceeding. Plaintiff's original action in Hamilton County Court of Common Pleas, Case No. A-1901296,

12

was brought against the same defendants named in the instant federal case, to wit: Harjinder

Sandhu, Jasreen Sandhu, Jeffrey Lane, April Lane, Brian O'Connell, Zachary Prendergast, and

Does 1-11.  (Doc. 1).  Hence, the second element is satisfied.

Finally, "the [instant] action raises claims that were or could have been litigated in the

[state court] action; and [] both actions arise out of the same transaction or occurrence."  *Meyer*,

950 N.E.2d at 1034.  "It has long been the law of Ohio that 'an existing final judgment or decree

between the parties to litigation is conclusive as to all claims which were *or might have been*

litigated in the first lawsuit.'"  *Nat'l Amusements, Inc. v. City of Springdale*, 558 N.E.2d 1178,

1180 (Ohio 1990) (emphasis in the original) (quoting *Rogers v. Whitehall*, 494 N.E.2d 1387,

1388 (Ohio 1986)).  The doctrine of "res judicata requires a plaintiff to present every ground for

relief in the first action, or be forever barred from asserting it."  *Grava*, 653 N.E.2d at 229.  Res

judicata is "a rigid obstacle to the bringing of future claims based on the same factual

circumstances, and the Supreme Court has indicated that there is 'no principle of law or equity

which sanctions the rejection by a federal court of the salutary principle of res judicata.'"

*Donald v. Frugal I Inc*., 74 F. App'x 593, 597 (6th Cir. 2003) (quoting *Federated Dep't Stores v.

Moitie*, 452 U.S. 394, 401 (1981)).

The same transaction or occurrence is defined as a "common nucleus of operative facts."

*Grava*, 653 N.E.2d at 229 (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)).

"That a number of different legal theories casting liability on an actor may apply to a given

episode does not create multiple transactions and hence multiple claims.  This remains true

although the several legal theories . . . would emphasize different elements of the facts."  *Id*.

(quoting Restatement (Second) of Judgments § 24 cmt. c).  *See also Bus. Dev. Corp. of S.C.*,

2022 WL 2168437, at *6 ("Under this definition, suits asserting different legal theories, relying on different evidence, or seeking different remedies can arise from the same 'transaction' if they concern the same general fact pattern."). Here, there is a common nucleus of operative facts between the state action and the instant action as plaintiff's claims in both actions stem from the events surrounding the receivership action. As the undersigned previously recognized in denying plaintiff's motion for a temporary restraining order, "Plaintiff's allegations in his federal complaint are exclusively concerned with the property dispute involving his ownership of Dina Towers and the related developments in the state court proceedings, including the state court's decision to extend the receivership beyond February 11, 2019. There is a complete overlap between the events and actions at issue and the parties involved in the state court litigation and the allegations in his federal complaint." (Doc. 7 at PAGEID 317). Consequently, the third and fourth elements of res judicata are satisfied.

By bringing claims in federal court based on actions taken in the receivership action, plaintiff is attempting to relitigate claims that arise out of the same transaction that was the subject matter of *Fontain v. Sandhu*, No. A-1901296, the state court lawsuit he brought against defendants. Moreover, the issue is not whether plaintiff stated similar claims in the prior state litigation, but whether the claims arise out of a "common nucleus of operative facts." *See State v. Dick*, 738 N.E.2d 456, 460 (Ohio Ct. App. 2000) (citing *Grava*, 653 N.E.2d at syllabus); *Portage Cty. Bd. of Comm'rs*, 846 N.E.2d at 495. Plaintiff's federal claims in the instant action arise out of the same transaction that was the subject of his prior state lawsuit against defendants and the constitutional and state law claims asserted in this federal action could have been brought in his state court action. *Grava*, 653 N.E.2d at 229-30; *Nat'l Amusements, Inc*., 558 N.E.2d at

14

1180. This Court is required to give the same preclusive effect to the previous state court judgment as would be given by the Ohio courts. *Migra*, 465 U.S. at 83-85.

For these reasons, plaintiff's federal complaint is barred by the doctrine of res judicata. Therefore, defendants' motions to dismiss (Docs. 8, 9) should be **GRANTED** on this basis.

Additionally, the complaint should be dismissed because it fails to state a claim for relief against Harjinder Sandhu, Jasreen K. Sandhu, Brian J. O'Connell, and Zachary D. Prendergast, and seeks relief against defendants (the Receiver defendants) who are immune from suit.

To state a claim for relief under 42 U.S.C. § 1983, a civil rights plaintiff must establish that: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The complaint against defendants O'Connell and Prendergast, who are both lawyers who represented the Sandhu and Receiver defendants in the underlying state court action, must be dismissed because private attorneys who represent clients in prior litigation do not act "under color of state law" for purposes of § 1983. *See Brantley v. Title First Titling Agency*, No. 1:11-cv-864, 2012 WL 1203564, at *3 (S.D. Ohio Apr. 10, 2012). "[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk Cnty. v. Dodson,* 454 U.S. 312, 318 (1981); *see also Harmon v. Hamilton Cnty. Court of Common Pleas,* 83 F. App'x 766, 767 (6th Cir. 2003) (holding that private attorneys did not act under color of state law in prior litigation); *Border City Sav. & Loan Ass'n v. Kennecorp Mortg. & Equities, Inc.,* 523 F. Supp. 190, 193 (S.D. Ohio 1981) ("Privately-retained attorneys do not act 'under color of state law' pursuant to § 1983 and their acts do not constitute 'state action' for the

15

purposes of the Fourteenth Amendment."). Accordingly, plaintiff's complaint fails to state a claim under § 1983 against defendants O'Connell and Prendergast.

Further, plaintiff fails to allege any facts showing the Sandhu defendants, who are private citizens, acted under color of state law. A private entity or private individual acting on his own cannot deprive a citizen of his constitutional rights. *See Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir. 2000) (citing *Flagg Brothers Inc. v. Brooks,* 436 U.S. 149 (1978); *Hudgens v. NLRB,* 424 U.S. 507 (1976)). Section 1983 does not create a cause of action against a private actor "'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)). Plaintiff's civil rights claims against Harjinder and Jasreen Sandhu must be dismissed because plaintiff alleges no facts whatsoever showing the actions of these private defendants "so approximate state action that they may be fairly attributed to the State." *Lansing,* 202 F.3d at 828 (citation omitted).

To satisfy the "color of state law" prong of Section 1983, plaintiff must allege facts showing that Mr. and Mrs. Sandhu were either 1) acting under the compulsion of the state (state compulsion test)[4]; 2) engaged in an activity traditionally reserved to the state (public function test); or 3) engaged in activities that were sufficiently close and/or controlled by the state that its actions could fairly be attributed to it (nexus test). *See Chapman v. Higbee Co.,* 319 F.3d 825,

---

[4] "The state compulsion test requires that a state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Lansing v. City of Memphis,* 202 F.3d 821, 829 (6th Cir. 2000) (citation omitted).

833 (6th Cir. 2003); *see also Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir. 2003). Plaintiff's complaint fails to allege facts meeting any of the three tests.

Plaintiff has alleged no facts showing that state law or a state entity significantly encouraged or coerced these defendants' actions such that the defendants may be deemed state actors under the state compulsion test. *See Clack v. Kentucky*, No. 3:18-cv-148, 2018 WL 3747470, at *6 (W.D. Ky. Aug. 7, 2018) ("Plaintiff fails to allege that Kentucky encouraged or coerced Defendant . . . to file for a [protection order]. [T]he state merely made it possible to obtain a [protection order].") (quoting *Tahfs*, 316 F.3d at 593). Plaintiff has not alleged facts showing the defendants' activities were ones traditionally reserved to the state. *See, e.g., Flagg Bros. v. Brooks,* 436 U.S. 149, 157-58 (1978) (holding elections is public function); *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352-53 (1974) (eminent domain is public function); *Marsh v. Alabama,* 326 U.S. 501, 505-09 (1946) (company-owned town is public function). Nor has plaintiff alleged facts showing the state had a sufficiently close relationship to the Sandhu defendants as to be a joint participant and/or interdependent with these defendants. "Merely filing a claim in a state court does not . . . make a private party a 'state actor' for purposes of § 1983." *Daviston v. Delaware Cnty. Tax Claim Bureau*, No. 19-cv-5848, 2019 WL 6894398, at *2 (E.D. Pa. Dec. 18, 2019) (citing *Kach v. Hose,* 589 F.3d 626, 646 (3d Cir. 2009) (holding that there must be such a "close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself.'") (quoting *Leshko v. Servis,* 423 F.3d 337, 339 (3d Cir. 2005)); *Read v. Klein,* 1 F. App'x 866, 870-71 (10th Cir. 2001) (former husband could not sue ex-wife and her attorney for obtaining a divorce decree by default, because neither the wife nor her attorney became state actors merely by filing a civil lawsuit in

17

state court)).  Likewise, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.'"  *Tahfs*, 316 F.3d at 592 (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)).  Finally, plaintiff has not alleged facts showing defendants either conspired or acted in concert with state officials.  *Cf. Dennis*, 449 U.S. at 27-28.  Plaintiff's conclusory allegations that Mr. and Mrs. Sandhu, private actors, conspired with a state actor under § 1983 (Doc. 1, ¶¶ 36, 83) are insufficient to survive a motion to dismiss. *See Tahfs*, 316 F.3d at 593.

Plaintiff has failed to allege facts suggesting a sufficient intermingling of state involvement with the Sandhu defendants to support a finding of state action.  Therefore, the Sandhu defendants cannot be deemed state actors, and plaintiff's constitutional claims under 42 U.S.C. § 1983 against these defendants must be dismissed.

Finally, the complaint against the receiver defendants should be dismissed.  Receivers are entitled to quasi-judicial immunity if the challenged actions are taken in good faith and are within the scope of the authority granted to the receiver.  *See Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976) (per curiam) (court-appointed receiver who did not act outside of his authority under court order or maliciously or corruptly was entitled to judicial immunity).  *See also Trinh v. Fineman*, 9 F.4th 235, 238 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1364 (2022) (and cases cited therein).  The issue of whether the receiver defendants acted within the scope of their powers and duties, were proper, reasonable, and necessary, and were taken in good faith has already been decided by the Ohio courts and is not subject to further review by this federal court.  *See Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 24, appeal not allowed, 2022-Ohio-3322, ¶ 24, 167 Ohio St. 3d

1526.[5]  Therefore, the Receiver defendants are entitled to quasi-judicial immunity, and the complaint as to these defendants should be dismissed.

## III.  Plaintiff's motion to amend and supplement the complaint (Doc. 16)

Plaintiff requests leave to amend and supplement the complaint to add two new defendants and a claim under the Racketeer Influenced and Corrupt Practices Act (RICO), 18 U.S.C. § 1962(c).  (Doc. 16 at PAGEID 680).  Plaintiff seeks to add as defendants Nancy Cara Asha and Hisham M. Asha, who were named plaintiffs in the state court receivership action. Plaintiff alleges the Asha defendants acted "in a pattern of racketeering, in conspiracy with the other" defendants.  (Doc. 16 at PAGEID 682).

Plaintiff's proposed amended complaint alleges that defendants "act[ed] in concert [and] engaged [] in a pattern of racketeering against the Plaintiff, his family[,] and the enterprise which runs afoul of the Racketeer Influenced and Corrupt Organizations Act (RICO)."  (*Id*.).  Plaintiff alleges that the conduct underlying his asserted RICO cause of action arose in the context of the receivership action, *H&R Cincy Props., LLC v. Fontain*, Case No. A-1705644 (Ohio Ct. App.). (Doc. 16-1 at PAGEID 703).  Plaintiff alleges that the "pattern of racketeering" began following Judge Nestor's decision in the above-captioned case "on behalf of [the] RICO Defendants . . . [and] against the Plaintiff. . . ."  (*Id*. at PAGEID 705).  Plaintiff further alleges that Judge Nestor, who is not a party to the instant action, issued judgments "at the urging and at the behest of the RICO defendants. . . ."  (*Id*.).  Plaintiff alleges that defendant O'Connell and the Sandhu

---

[5] Even if plaintiff's complaint could be construed as bringing a claim against the receiver defendants in their official capacity, the complaint must be dismissed under the *Barton* doctrine because plaintiff has not sought and obtained leave from the Ohio state court to bring this action against the receiver.  *See OHM Sys., Inc. v. Park Place Corp.*, No. 1:19-cv-0907, 2020 WL 2572203 (S.D. Ohio May 21, 2020) (citing *Barton v. Barbour*, 104 U.S. 126, 129 (1881)) (for the reasons stated therein).

defendants "corruptly submitted" motions to Judge Nestor "in furtherance of a well-orchestrated racketeering scheme aided and abetted" by Judge Nestor.  (*Id*. at PAGEID 683).  Plaintiff also alleges that several non-parties participated in the corrupt scheme.  (*Id*. at PAGEID 684; *see also* Doc. 16-1 at PAGEID 700-02).  Plaintiff alleges that the RICO Defendants acted in concert and engaged in a scheme and pattern of racketeering by repeatedly attempting to have corrupt judgments issued.  (*Id*. at PAGEID 705-11).

The proposed amended complaint further alleges, *inter alia*, that in the 2017 receivership action defendants repeatedly called him a convicted felon both in pleadings and in oral arguments "to justify their malfeasance, misfeasance and used to further their pattern of racketeering acts" (Doc. 16-1 at PAGEID 694); defendant O'Connell filed a motion asking Judge Nestor to grant judgment against plaintiff by referencing plaintiff's past felony conviction and vexatious litigation; the Sandhu defendants and their co-conspirators, through the receivership action "fraudulently set themselves out to destroy the properties of the Fontain's (sic) and the enterprise and refused to pay condominium fees and assessments to the tune of more than $45,000" (*Id*. at PAGEID 694-95); in 2017 the Sandhu and Asha defendants "in a continued pattern of racketeering attempting to gain control of the enterprise, filed a frivolous lawsuit packed with bold face lies, titled *H&R Cinci Properties, LLC, v. Marcus Arthur Fontaine,* Case No. A1705644 (the *'H&R Cinci case'*) against the Plaintiff and his family alleging among other things poor maintenance, mismanagement and theft of some $30,000 from the [Dina Towers] funds and demanding the formation of a Board of Directors for the [Dina Towers]" (*Id.* at PAGEID 695); "[t]he entire lawsuit was a sham and fraud and not one single allegation had any merit" (*Id*.); the first judge in the receivership action appointed a receiver, and Judge Nestor

refused to end the receivership in contravention of the previous judge's rulings; Judge Nestor ruled against plaintiff at the behest of the other defendants; Judge Nestor issued two judgments against plaintiff, which were a sham and the product of corruption; defendants filed motions for sanctions against plaintiff; Judge Nestor granted defendants broad control over Dina Towers and "the receiver practically drove the property into the ground" (*Id*. at PAGEID 710); Judge Nestor issued a corrupt Restraining Order against plaintiff and his wife "without any legal basis, based on false and fabricated allegations" (*Id*. at PAGEID 720); Judge Nestor extended the receivership past its end date and did so "to help his co-conspirators churn-legal-fees by fabricating fraudulent charges against the Plaintiff and his family and the enterprise representing extortion, fraud and black mail to the tune of nearly $80,000 in a period of nine (9) months which is the equivalent of an entire year of the gross revenue of the [Dina Towers]" (*Id*. at PAGEID 716); "[f]rom January 17, 2019 to September 12, 2019, the RICO Defendants, to silence the Plaintiff, in aid of their racketeering activities filed: (a) at least three (3) *ex parte* Motions and held at least one *ex parte* hearing on April 30, 2019, attempting to have Judge NESTOR declare the Plaintiff a - vexatious litigator - without having the legal elements required under the Ohio vexatious litigator's law and (b) filed at least two (2) Motions asking for Judge NESTOR to hold the Plaintiff . . . in contempt." (*Id*.). Plaintiff also alleges that the RICO defendants engaged in mail and wire fraud as predicate offenses for purposes of the RICO cause of action. (*Id*. at PAGEID 727-32).

The granting or denial of a motion to amend pursuant to Fed. R. Civ. P. 15(a) is within the discretion of the trial court. Leave to amend a complaint should be liberally granted. *Foman v. Davis*, 371 U.S. 178 (1962). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving

party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).  The test for futility is whether the amended complaint could survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

Plaintiff's motion to amend the complaint should be denied as futile because it fails to state a RICO claim and is barred by res judicata.

To state a claim under the federal RICO statute, plaintiff must plead the following elements: "(1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013).  Plaintiff "must plead (1) two or more predicate offenses; (2) the existence of an 'enterprise;' (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) resulting injury to business or property." *Est. of Wyatt v. WAMU/JP Morgan Chase Bank*, No. 09-14919, 2012 WL 933351, at *4 (E.D. Mich. Jan. 11, 2012), *report and recommendation adopted*, 2012 WL 933289 (E.D. Mich. Mar. 20, 2012) (quoting *Miller v. Norfolk Southern Ry. Co.*, 183 F. Supp. 2d 996, 1001 (N.D. Ohio 2002)).  To show an "enterprise" under RICO, a plaintiff must show "'(1) an ongoing organization with some sort of framework . . . for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.'" *Smith v. Nationstar Mortg.*, No. 1:17-cv-1483, 2017 WL 6594009, at *4 (N.D. Ohio Dec. 21, 2017), *aff'd sub nom. Smith v. Nationstar Mortg., LLC*, 756 F. App'x 532 (6th Cir. 2018) (quoting *Ouwinga v. Benistar, 419 Plan Services, Inc.*, 694 F.3d 783, 794 (6th Cir. 2012)).

22

RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity" committed within a ten-year period. *Akers v. Maerkle*, No. 3:20-01107, 2021 WL 5863827, at *5 (M.D. Tenn. Oct. 22, 2021), *report and recommendation adopted in part*, No. 3:20-cv-01107, 2021 WL 5846232 (M.D. Tenn. Dec. 9, 2021) (quoting 18 U.S.C. § 1961(5)).  Mail and wire fraud may be asserted as predicate acts in a civil RICO claim.  *Heinrich v. Waiting Adoption Serv., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).  To state a RICO claim based on predicate acts of mail and/or wire fraud, a plaintiff must "adequately allege[] a scheme to defraud, the use of the mail or wires in furtherance of the scheme, and a sufficient factual basis from which to infer scienter."  *Id*. at 409.

Plaintiff's proposed amended complaint provides no factual content or context from which the Court may reasonably infer that the defendants a) engaged in conduct of an enterprise through a pattern of racketeering activity, b) used the postal service or other interstate mail carrier to carry out fraudulent acts, so as to constitute mail fraud, and/or c) used wire communications in the existence of a scheme to defraud, and that the scheme was intended to deprive plaintiff of money or property.  *Iqbal*, 556 U.S. at 678; *McCormick v. Franklin Cnty. Ct. of Common Pleas, Domestic Div.*, No. 2:19-cv-03329, 2020 WL 4334886, at *5 (S.D. Ohio July 28, 2020).  "Courts have repeatedly held in RICO cases alleging mail fraud and wire fraud as the 'predicate acts,' the underlying fraudulent activities must be pled with particularity."  *FRC Int'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*, No. 3:01-cv-7533, 2002 WL 31086104, at *16 (N.D. Ohio Sept. 4, 2002) (quoting *Eby v. Producers Co-op. Inc.*, 959 F. Supp. 428, 431 (W.D. Mich. 1997) (in turn quoting *Berent v. Kemper Corp.*, 780 F. Supp. 431, 448 (E.D. Mich. 1991))).

23

> Courts have been particularly sensitive to FED. R. CIV. P. 9(b)'s pleading requirements in RICO cases in which the "predicate acts" are mail fraud and wire fraud, and have further required specific allegations as to *which* defendant caused *what* to be mailed (or made which telephone calls), and *when* and *how* each mailing (or telephone call) furthered the fraudulent scheme.

*FRC Int'l, Inc.*, 2002 WL 31086104, at *16 (quoting *In Gotham Print, Inc. v. American Speedy Printing Centers, Inc.*, 863 F. Supp. 447, 458 (E.D. Mich. 1994) (emphasis in original).

Plaintiff's proposed amended complaint alleges, on information and belief, that "the U.S. Mail was used to submit the Sham Documents by RICO Defendants to each other, to others, to Plaintiff and Plaintiff's counsel, to the Court, and to other members of the public in the course of litigating the [receivership] case" and "that the contents of the Sham Documents contained false statements in violation of law."  (Doc. 16-1 at PAGEID 728).  As to the predicate act of wire fraud, plaintiff alleges, on information and belief:

> U.S. wire services were used to submit the Sham Documents by Defendants to each other, to Plaintiff and Plaintiff's counsel, to the Court, and to other members of the public in the course of litigating and prosecuting the case. . . .

> RICO Defendants also used U.S. wire services to conduct telephone calls with each other, opposing counsel, Plaintiff's counsel, witnesses, and the court to communicate false information for the advancement of the conspiracy as alleged herein.

(*Id.* at PAGEID at 729-30).

Here, plaintiff's bare allegations that defendants mailed various litigation-related documents and used the "U.S. wire services" to communicate "false information" plainly fall short of the heightened pleading requirements for RICO claims based on mail and wire fraud.  The allegations fail to identify who mailed or communicated the allegedly fraudulent or misleading documents or statements, the particular documents or communications at issue, and when and to whom such documents or statements were

made to adequately plead the existence of an overall scheme to defraud.  Moreover, other

than general conclusory allegations, plaintiff's proposed amended complaint fails to

allege specific facts to suggest that there existed a "scheme to defraud" and the use of

mail was "in furtherance of the scheme."  *Cf. United States v. Jamieson*, 427 F.3d 394,

402 (6th Cir. 2005).  Accordingly, plaintiff's motion to amend the complaint to add a

RICO claim should be denied as futile.

Additionally, plaintiff's motion to amend the complaint should also be denied under the

doctrine of res judicata.  By plaintiff's own admission, "the facts and claims [] in the RICO

action, arise out of the same" facts underlying *H&R Cincy Props., LLC v. Fontain*, Case No. A-

1705644 (Ohio Ct. App.).  (Doc. 16 at PAGEID 681).  As explained above in connection with

defendants' motions to dismiss, there exists a common nucleus of operative facts between the

state action and the instant action, and there is a complete overlap between the events and actions

at issue and the parties involved in the state court litigation and the allegations in plaintiff's

proposed amended complaint.  Consequently, plaintiff's motion to amend the complaint (Doc.

16) should also be dismissed as barred by the doctrine of res judicata.

## IV.  Plaintiff's pending motions (Docs. 12, 13, 23, 24, 26, 50, 62, 64)

Also before the Court are plaintiff's request, and amended request, for judicial notice of

the ruling of the Ohio First District Court of Appeals under Fed. R. Evid. 201(b) (Docs. 12, 13),

plaintiff's omnibus motion to strike (Doc. 23), plaintiff's motions to set the case on the trial

calendar and motion for electronic filing privileges (Docs. 24, 26, 64), plaintiff's motion for

sanctions (Doc. 50), defendants' response in opposition to plaintiff's motion for sanctions (Docs.

53, 56), plaintiff's reply memorandum in support of sanctions for fraud upon the Court for

submission of false and misleading pleadings (Doc. 57), and plaintiff's "motion for declaratory judgment, equitable and injunctive relief, motion for disciplinary referral, criminal referrals and for sanctions and rule 57 speedy hearing" (Doc. 62).

First, to the extent plaintiff requests the Court to take judicial notice of the state case, *H&R Cinci v. Fontaine*, No. A1705644 (Docs. 12, 13), plaintiff's requests are moot in light of the Court's recommendation that defendants' motions to dismiss (Docs. 8, 9) should be granted. Moreover, as explained above, the Court took judicial notice of the actions of *Fontain v. Sandhu*, No. A-1901296, Hamilton County Court of Common Pleas, and *Fontain v. Sandhu*, No. C-200011, Ohio Court of Appeals, First Appellate District, which in turn, encompass *H&R Cinci v. Fontaine*, No. A1705644. Therefore, plaintiff's requests for the Court to take judicial notice (Docs. 12, 13) are **DENIED** as moot.

Plaintiff's "omnibus motion to strike defendant's Prendergast and O'Connell's motions for summary judgment styled as 'reports' on the status of state cases" (Doc. 23) is **DENIED**. As best the Court can discern, plaintiff argues that the status report filed by defendants Prendergast and O'Connell must be stricken from the record because it is "tantamount to [a] Motion[] for Summary Judgment[] in violation of this Court's June 03, 2019, Order of Stay and in violation of this Court's June 04, 2020, Order for a Status Report of the State cases." (Doc. 23 at PAGEID 1035-36) (emphasis in original). To the extent that plaintiff asks the Court to strike defendant Prendergast and O'Connell's status reports, plaintiff's motion is **DENIED** as moot in light of the Court's recommendation that defendants' motions to dismiss be granted.

Moreover, in light of the recommendation that defendants' motions to dismiss be granted, the Court **DENIES** plaintiff's motions to set the case on the trial calendar and for electronic

26

filing privileges (Docs. 24, 26, 64).  For the same reasons, plaintiff's "motion for declaratory

judgment, equitable and injunctive relief, motion for disciplinary referral, criminal referrals and

for sanctions and rule 57 speedy hearing" (Doc. 62), which is based on plaintiff's allegation of "a

well-orchestrated and executed Title 18 U.S.C. § 1962(C) criminal RICO conspiracy and a

racketeering scheme" (*Id*. at PAGEID 2302), should be denied on the basis of res judicata and

for the reasons set forth in the recommendation to deny plaintiff's motion to amend the

complaint.

Finally, plaintiff seeks sanctions against defendants O'Connell and Prendergast under

Fed. R. Civ. P. 11.  (Doc. 50).  Plaintiff argues that sanctions are warranted against these

defendants "for fraud upon the court and for their submission of false or misleading pleadings, in

connection with this pending proceeding. . . ."  (*Id*. at PAGEID 2061).  As best the Court can

discern, plaintiff's motion for sanctions stems from defendant O'Connell and Prendergast's April

27, 2022 status reports to the Court (Docs. 48, 49) in which plaintiff alleges contain "false or

misleading statements of material fact. . . ."  (Doc. 50 at PAGEID 2061).

Fed. R. Civ. P. 11 "affords the district court the discretion to award sanctions when a

party submits to the court pleadings, motions or papers that are presented for an improper

purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the

allegations and factual contentions do not have evidentiary support."  *First Bank of Marietta v.*

*Hartford Underwriters Ins. Co*., 307 F.3d 501, 510 (6th Cir. 2002) (citing Fed. R. Civ. P.

11(b)(1)-(3)).  The test for whether Rule 11 sanctions are warranted is whether the conduct for

which sanctions are sought was "reasonable under the circumstances."  *Salkil v. Mount Sterling*

*Twp. Police Dept*., 458 F.3d 520, 528 (6th Cir. 2006) (quoting *Ridder v. City of Springfield*, 109

F.3d 288, 293 (6th Cir. 1997)).  A court may not rely on "the wisdom of hindsight" in determining whether the challenged conduct was reasonable under the circumstances; rather, the court must determine what was reasonable to believe at the time the pleading, motion, or other paper was submitted.  *Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citation omitted).

It is required, however, that a party seeking sanctions under Rule 11 must follow a two-step process: "first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder*, 109 F.3d at 294.  This process, known as the "safe harbor" provision, is an "absolute requirement." *Id*. at 296.

Here, plaintiff's motion for sanctions must be denied because there is no indication that plaintiff complied with the requirements of Rule 11 by communicating with defendants before filing his motion for sanctions.  Instead, the certificate of service in plaintiff's motion for sanctions indicates that defendants were served on the same day it was filed on the docket of the Court.  (Doc. 50 at PAGEID 2103-04).  Accordingly, plaintiff's motion for sanctions (Doc. 50) should be **DENIED** on this basis.  *See McDougald v. Eaches*, No. 1:16-cv-900, 2018 WL 1640862, at *3 (S.D. Ohio Apr. 5, 2018).  *See also Brautigam v. Damon*, No. 1:11-cv-551, 2015 WL 11018199, at *4 (S.D. Ohio Nov. 17, 2015), *report and recommendation adopted*, No. 1:11-cv-551, 2016 WL 792014 (S.D. Ohio Mar. 1, 2016), *aff'd on other grounds*, 697 F. App'x 844 (6th Cir. 2017) ("In addition, plaintiff has not complied with Rule 11's safe harbor provision, which requires the moving party to serve his motion on the opposing party 21 days before filing the motion with the Court."  (citing Fed. R. Civ. P. 11(c)(2)).

28

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motions to dismiss (Docs. 8, 9) be **GRANTED**.

2. Plaintiff's motion to amend the complaint (Doc. 16) be **DENIED**.

3. Plaintiff's "motion for declaratory judgment, equitable and injunctive relief, motion for disciplinary referral, criminal referrals and for sanctions and rule 57 speedy hearing" (Doc. 62) be **DENIED**.

4. Plaintiff's motion for sanctions (Doc. 50) be **DENIED**.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motions pending before the Court (Docs. 12, 13, 23, 24, 26, 64) are **DENIED**.

Date: 10/11/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARCUS FONTAIN,                                        Case No. 1:19-cv-304
      Plaintiff,                                       McFarland, J.
                                                       Litkovitz, M.J.

      vs.

APRIL L. LANE, et al.,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report

objected to and shall be accompanied by a memorandum of law in support of the objections.  If

the Report and Recommendation is based in whole or in part upon matters occurring on the

record at an oral hearing, the objecting party shall promptly arrange for the transcription of the

record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems

sufficient, unless the assigned District Judge otherwise directs.  A party may respond to

another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure

to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

30